(C. D. 1684)

HOLLAND COLOMBO TRADING SOCIETY, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided March 3, 1955)

*John D. Rode* for the plaintiff.

*Warren E. Burger,* Assistant Attorney General (*Harold L. Grossman* and *William J. Vitale,* trial attorneys), for the defendant.

Before EKWALL and JOHNSON, Judges

EKWALL, Judge: In this case, plaintiff seeks to recover duty assessed on an importation of coconut shell charcoal, imported from Ceylon. The collector classified the merchandise under paragraph 1558 of the Tariff Act of 1930 as an article, manufactured in part, not specially provided for, and assessed duty thereon at the rate of 20 per centum ad valorem. Plaintiff makes numerous claims, the one relied on being that the merchandise is properly free of duty as wood charcoal under the *eo nomine* provision therefor in paragraph 1802 of the same act. It is alternatively claimed free under paragraph 1722 of that act as a vegetable substance, crude, or dutiable at 5 per centum ad valorem under said paragraph 1558, as modified by the General Agreement on Tariffs and Trade (T. D. 51802), as a raw or unmanufactured article, or (in an amendment to the protest) at 15 per centum ad valorem under paragraph 216 of said act, as modified by the same agreement, as an article or ware, composed wholly or in part of carbon.

For convenience of reference, we set out the various provisions of the statute involved, as follows:

Paragraph 1558, Tariff Act of 1930, under which the imported merchandise was classified by the collector, reads as follows:

PAR. 1558. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

Paragraph 1802 of the same act, under which it is claimed the merchandise is properly free of duty, provides as follows:

PAR. 1802. Wood charcoal.

Paragraph 1722, under which alternative claim is made, reads as follows:

PAR. 1722. Moss, seaweeds, and vegetable substances, crude or unmanufactured, not specially provided for.

Paragraph 1558 of the act, as modified by the general agreement (T. D. 51802), under which an alternative claim is also made, reads as follows:

| Tariff Act of 1930, paragraph | Description of Products | Rate of Duty |
|---|---|---|
| 1558 | All raw or unmanufactured articles not enumerated or provided for (except frogs and frog legs) _____ | 5% ad val. |

Paragraph 216 of the same act, as modified by the same agreement, under which a further alternative claim is made, reads as follows:

| Tariff Act of 1930, paragraph | Description of Products | Rate of Duty |
|---|---|---|
| 216 | Articles or wares composed wholly or in part of carbon or graphite, wholly or partly manufactured, not specially provided for___ | 15% ad val. |

We, therefore, have before us the questions whether coconut shell charcoal is (1) wood charcoal, (2) a crude or unmanufactured vegetable substance, (3) a raw or unmanufactured article, not specially provided for, or (4) an article or ware, composed in part of carbon, as claimed by the plaintiff, or an unenumerated article manufactured, in whole or in part, not specially provided for, as classified by the collector. The claim relied on by the plaintiff is that for free entry as wood charcoal.

There appears to be no dispute but that the commodity consists of the shells of coconuts, which have been processed into a form of charcoal designated as coconut shell charcoal.

Plaintiff introduced the testimony of two witnesses, together with four exhibits. One witness testified on behalf of the defendant.

Plaintiff's exhibit 1 consists of a memorandum to accompany invoice, in which the examiner reports that this merchandise "* * *

consists of dense vegetable charcoal having the characteristics and appearance of carbonized coconut shell charcoal, * * *." This report was approved by the appraiser at the port of entry. Exhibit 2 consists of a report of the chief Government chemist at that port as follows:

\* \* \* \* \* \* \*

The samples submitted to the laboratory from this entry were reported as pieces of dense vegetable charcoal having the characteristics and appearance of carbonized coconut shell.

This report is verified.

The importation consists of coconut shell char.

Exhibit 3 is a report of the United States Customs Laboratory at the same port, which states:

The samples submitted consist of pieces of dense vegetable charcoal having the characteristics and appearance of carbonized coconut shell.

Plaintiff's exhibit 4 is an illustrative sample of the imported merchandise.

The president of the corporation which imported this commodity testified that his experience covered a period of 27 years, during which he had been connected with companies in the United States and also abroad that handled coconut shell charcoal from Ceylon and Indonesia. During that time, he has dealt in thousands of tons of coconut shell charcoal, both in this country and in Europe. His concern has sold it in the condition, as imported, to users in Europe, Great Britain, and the United States, including the French Government, the British Government, and the United States Government Chemical Warfare Service. The charcoal so sold to the various Governments was used for the purpose of purifying the air, for "using gas masks and gasproof rooms." The witness described the process by which the imported commodity was produced in Ceylon as follows: The coconuts are split in half and the meat removed from the shells; the shells are placed in pits or holes in the ground, in which a fire has been built, which is then covered with grass; the shells are placed on top and covered with gunny bags, and the whole is allowed to "smother" perhaps for 2 days. The witness testified that merchandise like illustrative exhibit 4 is sold to an engineering company which makes charcoal blocks and pieces and sells it as a purifier. It is also used in air-conditioning units. It is sold under the name "coconut shell charcoal." The witness stated that this commodity is sold as coconut shell charcoal rather than wood charcoal "because the people want to know what kind of wood charcoal it is." If his company were to sell pine wood or oak charcoal, it would sell same under the name "oak charcoal" or "pine charcoal." The company here involved sells only one type of charcoal, that is, coconut shell charcoal.

Plaintiff's second witness was a chemist and chemical engineer, being president of a firm of consulting chemists and engineers, employing approximately 125 persons, of whom about two-thirds have some technical degree. He, himself, has written books on chemistry and numerous articles for technical manuals. His firm is primarily a research organization, developing products or processes, and also tests the average run of chemicals. He has tested various charcoals, seen them used, studied about them, and written about them. Probably the widest spread use of charcoal is as an adsorbent for colors, where it is used in purifying sugar solutions and solutions of organic chemicals of various types, from which the impurities and tarry materials are removed by charcoal. The other important use of charcoal is as absorbent for gases, that is, in purifying the air of a room or in a gas mask to remove noxious gases. Coconut shell charcoal is used for the same purposes as other charcoals, with the exception that the witness had never seen it used for decolorizing solutions. Charcoals are of various kinds, usually designated by their source, the two basic kinds being animal charcoal and wood charcoal. There are a number of kinds of wood charcoal, willow charcoal or vine charcoal, coconut shell charcoal, or, occasionally, pine charcoal and maple charcoal. The witness regarded coconut shell charcoal as a wood charcoal. It is an impure form of carbon.

On cross-examination, this witness stated that he has never bought or sold charcoal as a broker; his organization buys hundreds of thousands of dollars worth of engineering equipment a year, but he had never bought or sold any of the charcoals referred to above by him. However, on redirect examination, he stated that he actually worked with people who were using coconut shell charcoal, has directed how they shall use it, and has observed how it is used; that the uses were commercial uses and were on a substantial businesslike scale.

Defendant introduced the testimony of the vice president of a firm of importers of tropical hardwoods, whose duties included buying and selling those commodities. He has never handled coconut shells. In his opinion, coconut shell is not wood; he has never bought it as wood. On cross-examination, he stated that he would not consider palm fiber wood.

From the record, it is clear that the commodity before us is charcoal. The question at issue, however, is whether it is wood charcoal. Charcoal has been provided for *eo nomine* in tariff statutes beginning with the Revised Statutes and continuing in the Tariff Acts of 1883, 1890, and 1894, but was omitted from the act of 1897. In the Notes on Tariff Revision, 1908, which were prepared for the use of the Committee on Ways and Means of the House in the preparation of the bill which was enacted as the Tariff Act of 1909, it was suggested that charcoal should be again specifically enumerated. (See Notes on Tariff

Revision, 1908, p. 266.) This suggestion was adopted, for we find in paragraph 10 of said Tariff Act of 1909, a provision for "Charcoal in any form, not specially provided for." In the act of 1913 (par. 447 of the free list) the provision was changed to read, "Charcoal, blood char, bone char, or bone black, not suitable for use as a pigment." It was not until the act of 1922 (par. 1699 of the free list) that the provision was limited to "Wood charcoal," which designation was carried over into the act of 1930 (par. 1802, *supra*). Diligent search has failed to reveal the reason for this limitation.

Plaintiff contends that not only does the testimony of its witnesses support its claim that coconut shell charcoal is a wood charcoal within the meaning of paragraph 1802, *supra*, but that such claim is further supported by numerous cited dictionary and encyclopedia definitions. We have examined these references carefully and find that while wood charcoal is discussed it seems that, in most of the references cited, it is under the general subject of charcoal, and not specifically wood charcoal. However, the matter quoted from 3 Chamber's Encyclopaedia, pages 279–280, as follows, is pertinent:

When wood charcoal especially that made from coconut shell, is kept at red heat for many hours, with only limited access of air, its capacity for adsorption (q. v.) of gases is greatly enhanced; it is then said to be active.

Defendant's witness was a dealer in tropical hardwoods; had never handled coconut shell. He stated, in answer to the question as to whether he was familiar with the coconut palm tree, that he had seen it growing and had seen the outer shell of the fruit, but he had never handled coconut shell in his business and had never known it to be bought as wood. Inasmuch as this witness' experience was limited to tropical hardwoods, and nowhere in the record is it claimed that coconut shell is a hardwood, his testimony is not helpful on the question of whether coconut shell is wood.

As stated above, plaintiff's first witness, while he testified that the instant commodity is wood charcoal, admitted that it is not bought and sold under that name, but under the specific name of coconut shell charcoal. Also plaintiff's second witness, who was the author of a book "Chemicals of Commerce," in which he discusses the various charcoals, stated that he considered coconut shell charcoal as a wood charcoal. A careful consideration of the record fails to refute the testimony of these witnesses, which we find sufficient to overcome the presumption of correctness attaching to the collector's classification.

In view of our finding, it is unnecessary to discuss plaintiff's alternative claims. We, therefore, sustain the protest insofar as it claims the commodity free of duty as wood charcoal under paragraph 1802 of the Tariff Act of 1930.

Judgment will be rendered accordingly.